**John D. DAVIS**

v.

**UNITED STATES STEEL CORPORATION.**

**Civ. A. No. 79–4391.**

United States District Court, E. D. Pennsylvania.

Feb. 18, 1982.

Michael Churchill, Philadelphia, Pa., for plaintiff.

Thomas Preston, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff alleges racial discrimination in employment in violation of 42 U.S.C. § 1981. The following comprises findings of fact and conclusions of law as required by Fed.R.Civ.P. 52.

### I. *Jurisdiction*

Federal question jurisdiction lies in this Court by virtue of 42 U.S.C. § 1981. Claims based on Title VII, 42 U.S.C. § 2000e *et seq.*, were dismissed at trial as untimely, the complaint having been filed after the expiration of the 90 day time limitation.

### II. *Findings of Fact*

John Davis alleges intentional racial discrimination on the part of defendant arising out of three separate categories of allegedly discriminatory treatment. First, plaintiff alleges that defendant failed to hire him as a craftsman as promptly as similarly situated whites, and that defendant failed to promote him within his craft as promptly as he deserved to be promoted. Second, plaintiff alleges that he was denied the use of equipment offered to others, and that this denial was a part of systematic harassment that was motivated by racial discrimination. Third, plaintiff alleges that he was denied assistance on the job when, because of physical impairment, he could not carry out certain heavy work. Plaintiff alleges that this denial of assistance was based on intentional racial discrimination.

### a. Initial Appointment and Promotion

Plaintiff was hired by defendant on March 13, 1973 and assigned to work as a laborer in the Pipe Mill department. Plaintiff was given a welding test and assigned on May 7, 1979 as a starting welder.

Having reviewed plaintiff's job application and having compared it with other applications filed at approximately the same time, having considered the hiring record of United States Steel Corporation, and having considered the testimony of Lawrence Edwards, I find that plaintiff was offered the first available craft position for which he was qualified after he was hired.

As to subsequent promotion, I find no intentional racial discrimination on the part of defendant. Plaintiff was promoted promptly after the normal period of review at each craft position. The evidence shows that all welders begin as "welder starters" and that they reviewed after 1,040 hours. There are exceptions to this rule, but the only evidence is that whites have done both better than plaintiff and worse than plaintiff. Ron Elliott, who by all accounts, (including plaintiff's) was an exceptionally skilled welder, was promoted from starter to standard rate welder long before the routine period had lapsed. By contrast Ken Burkhardt, who is white, progressed from starter to standard rate weld-

er at a rate much slower than Mr. Davis's and over a period of time much longer than the routine 2080 hours. I cannot find adverse treatment here, much less intentional racial discrimination.

b. Denial of Equipment

Plaintiff alleges that he was denied important welding equipment and safety equipment. As to the equipment for use on the job such as his pants, which he claims were too large, and his helmet, which he claims was damaged, I cannot find any evidence of disparate and adverse treatment. Mr. Davis testified that he was promised the first new helmet to be delivered and the uncontradicted evidence is that plaintiff was given the smallest pair of pants available. The evidence of Mr. Faust, which I find credible, is that many of the welders at U. S. Steel modify at their own expense the equipment issued to them when it is not satisfactory. Plaintiff also alleges that he was discriminated against in the assignment of the few combination torches. As it appears from the evidence that the combination torches were assigned to a relatively small number of welders and that a number of white welders also did not receive combination torches, I cannot deduce from the facts revealed at trial any evidence of intentional racial discrimination against the plaintiff. Finally, plaintiff alleges that he was denied the use of ventilation equipment when it was needed. His own witness, however, Ron Elliott, who is white, testified that he too had difficulty obtaining the necessary ventilation equipment. Again, I cannot infer from this evidence that there is intentional racial discrimination against plaintiff.

c. Assistance on the Job

The undisputed evidence is that plaintiff was on a disability leave from work between May 1974 and October 1974. In that period he experienced exploratory lung surgery, the full dimensions of which are not known, but which appears not to have been debilitating. Plaintiff testified that upon his return to work he was reluctant to pull or lift any particularly heavy loads. He testified that initially he was given special assistance but that on several occasions the assistance was not available. It is undisputed that at the time he was considered by the company as being capable of doing any assigned work. Defendant maintained a system for permitting light duty work, and there is no evidence that plaintiff ever requested light duty work. Plaintiff himself testified that he was told he would be given what help was available and that he was given assistance when assistance was feasible. I need not consider whether or not plaintiff was actually suffering from any diminished physical capacity, however, because there is no evidence of whites under similar circumstances being given the kind of assistance that was denied plaintiff. Plaintiff has instead testified that there were whites in the vicinity who were not permitted to help him.

III. *Conclusions of Law*

In order to prevail in this case plaintiff must prove intentional racial discrimination. *Croker v. Boeing Vertol*, 662 F.2d 975 (3rd Cir. 1981). As I have found no evidence of disparate treatment based on race, and no evidence of intentional racial discrimination, judgment will be entered for defendant and against plaintiff.

Defendant has argued that plaintiff has adduced no evidence of damages, and that even if he were to prevail at the liability stage he would not be entitled to recovery. Having found that no basis for liability exists, I conclude that the point is moot.