543 A.2d 165

Ayana Scott et al., Appellants *v.* Gregory Willis et al., Appellees.

328

Argued February 23, 1988, before Judges Doyle and Barry, and Senior Judge Narick, sitting as a panel of three.

*Jay Impellizzeri,* with him, *John Wendell Beavers,* for appellants.

*Andrew M. Rosen,* for appellees.

OPINION BY JUDGE DOYLE, May 25, 1988:

Before this Court is the appeal of two minors, Ayana Scott and Tyisha Page, and their respective guardians, Glenda Scott and Marjorie Booker, (Appellants) from an order of the Court of Common Pleas of Philadelphia County sustaining preliminary objections in the nature of a demurrer of the defendants, the School District of Philadelphia; Constance E. Clayton, Superintendent; Rita Spellman, Principal of Cook Wissahickon School; Anthony Bellows, Principal of Kelly School; and Gene W. Waiters, Investigator for the School District (Appellees).

The facts alleged are as follows.[1] Appellants, Ayana Scott and Tyisha Page were students at Cook Wissa-

---

[1] In an appeal from an order sustaining preliminary objections in the nature of a demurrer, we are constrained to examine only the well-pleaded facts of the complaint; a demurrer admits those facts and any inferences reasonably deducible therefrom. *Easton Area Joint Sewer Authority v. Bushkill-Lower Lehigh Joint Sewer Authority,* 71 Pa. Commonwealth Ct. 553, 455 A.2d 286 (1983).

hickon Elementary School when they were sexually assaulted on school grounds by Gregory Willis who was then a teacher at their school. At the time of these incidents, Ayana Scott was in kindergarten and Tyisha Page was in the second grade. The teacher, Willis, assaulted the children in his school office where he had placed posters over the windows. Willis subsequently pled guilty to charges of involuntary deviate sexual intercourse and corruption of minors, and he is presently serving a prison term.

Appellants filed their complaint in trespass on October 27, 1986 alleging, *inter alia,* that the School District of Philadelphia (School District) and the named government officials knew or should have known about the deviate sexual tendencies of Willis, and that Appellants suffered injury as a result of Appellees' wanton and reckless disregard for the safety of the children in their care. The complaint further averred that the School District and Appellees, Clayton and Spellman, violated the constitutional rights of the minor children to privacy, liberty and the right to obtain an education without physical and sexual assault, as protected by 42 U.S.C. §§1981, 1983 and 1988, and the Fourteenth Amendment.

On December 4, 1986, Appellees filed preliminary objections in the nature of a demurrer to the state tort claims, based upon governmental immunity, as well as a demurrer to the federal constitutional claims. Appellants filed their answer to the preliminary objections on January 7, 1986.[2] The Honorable SAMUEL M. LEHER sus-

---

[2] We note that Pa. R.C.P. 1030 requires that all affirmative defenses, including immunity from suit, shall be pled in a responsive pleading as a "New Matter." Thus, the proper manner for Appellants to proceed would have been to file preliminary objections to Appellees' preliminary objections in the nature of a motion to strike for lack of conformity to law or rule. *See Swartz v. Masloff,* 62 Pa. Commonwealth Ct. 522, 437 A.2d 472 (1981).

tained Appellees' preliminary objections ruling that the School District and the named government officials are immune from state law tort claims pursuant to the governmental immunity sections of the Judicial Code[3] (Code). Judge LEHER also dismissed the constitutional claims due to Appellants' failure to allege a custom or policy which resulted in constitutional harm, and their failure to plead specific facts to establish the direct involvement of Appellees, Clayton and Spellman.

### State Law Tort Claims

Appellants present two theories which, if legally sound, would strip Appellees of their cloak of governmental immunity. The first theory rests upon the real property exception to the governmental immunity section of the Code.[4] The second theory asserts that the individual government officials are personally liable since their alleged actions amounted to willful misconduct. As our opinion will show, however, neither of these attempts to overcome the bar of governmental immunity can succeed.

Focusing first upon the state law claims against the School District, the general rule of governmental immunity, as set forth in Section 8541 of the Code, is that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any changes on account of

However, this Court has held that preliminary objections are a proper vehicle for raising immunity where: (1) the Court finds, as we do here, that the defense appears on the face of the pleadings under attack, *Ziccardi v. School District of Philadelphia*, 91 Pa. Commonwealth Ct. 595, 498 A.2d 452 (1982); and (2) the opposing party has not filed preliminary objections to the preliminary objections raising immunity from suit. *McCreary v. City of Philadelphia*, 95 Pa. Commonwealth Ct. 285, 505 A.2d 385 (1986).

[3] 42 Pa. C. S. §8541-42.

[4] 42 Pa. C. S. §8542(b)(3).

any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[5] Without question, the School District is a local agency under Pennsylvania law;[6] yet, its immunity is not absolute. Governmental immunity may be overcome where Appellants can demonstrate: (1) that they possess a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense; and (2) that the alleged negligence was caused by the local agency or its employee acting within the scope of his or her authority with respect to one of the eight enumerated exceptions.[7]

In the case at hand, Appellants assert that their tort claims against the School District fall within the real property exception to the general rule of governmental immunity. This exception states:

> (b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (3) *Real Property*—The care, custody or control of real property in the possession of the local agency, . . .

42 Pa. C. S. §8542(b)(3). Appellants contend that the School District is vulnerable to suit under the real property exception because its employees allowed Willis to cover up the windows of his office with posters. As Appellants reasoned in their brief:

> Teacher Willis' office had windows. It was designed that way for a reason, very possibly of securing a child's safety therein. It was allowed to

---

[5] 42 Pa. C. S. §8541.

[6] 42 Pa. C. S. §8501.

[7] 42 Pa. C. S. §8542(a).

fall into disrepair and but for this fact, the sexual assault on appellants would not have been possible.

(Appellants' brief at 11).

However, Appellants' creative real property theory must fail in light of our Supreme Court's recent decision in *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). The plaintiffs in *Mascaro* suffered severe injuries inflicted by a juvenile who escaped from a detention center for juvenile criminal offenders. The plaintiffs contended that the center and the City of Philadelphia, which administered the program, were subject to suit under the real property exception for the negligent failure to maintain the premises. Plaintiffs argued that if not for the faulty doors and windows which facilitated the juvenile's escape, they would never have been harmed. Thus, both *Mascaro* and the present matter raise the issue of whether or not a local agency is vulnerable to suit under the real property exception when the actual harm is perpetrated by a third party. The *Mascaro* Court answered this question with the statement that "the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the *land itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." *Id*. at 363, 523 A.2d 1124 (emphasis added). Furthermore, any attempt to distinguish *Mascaro* on the basis that the present matter involves children in the care of the elementary school who were harmed by a school employee, must likewise fail. As the *Mascaro* Court stated, "[t]he real estate exception, however, has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately." *Id*. at 362, 523 A.2d at 1124. Clearly, then, the real property ex-

ception is unavailable to Appellants, and their claims against the School District were correctly dismissed.

Moreover, Section 8545 of the Code provides that:

An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 Pa. C. S. §8545. Therefore, the government officials, Constance E. Clayton, Rita Spellman, Anthony Bellows, and Gene W. Waiters, all possess immunity defenses coextensive with that of the School District. Accordingly, the trial court correctly dismissed the claims against the government officials in their official capacities.

Further, Appellants contend that the individual government employees must be retained in this lawsuit on the basis of their personal liability for alleged willful misconduct. Section 8550 of the Code states in pertinent part:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct the provisions of Sections 8545 . . . , 8546 . . . , 8548 . . . and 8549 . . . shall not apply.

42 Pa. C. S. §8550. This exception strips employees of their governmental immunity if they are found to be guilty of intentional torts. *LaPlant v. Frazier*, 564 F. Supp. 1095 (E.D. Pa. 1983).

Appellants allege that each of the Appellees possessed actual or constructive knowledge of Willis' past

deviate sexual behavior and nonetheless retained him as an employee. Appellants urge that since they pled that Appellees' torts were "willful," Section 8550 controls.

We must concur with the trial court, however, that Appellants' allegations of "gross and culpable negligence" and "wanton and reckless behavior" are not the legal equivalent of willful and intentional misconduct. Further, Appellants have failed to plead the sufficient factual predicates on which they could establish willful misconduct. *See Weissman v. City of Philadelphia,* 99 Pa. Commonwealth Ct. 403, 513 A.2d 571 (1986). In light of the conclusory nature of Appellants' complaint, we cannot say that Judge LEHER's dismissal of the claims against the Appellees in their individual capacities was improper.

### *The Federal Constitutional Law Claims*

Preliminary objections in the nature of a demurrer require the reviewing Court to consider whether petitioner has stated on the face of his petition a cause of action which, if proved, would entitle him to the relief sought. *Robinson v. Department of Justice,* 32 Pa. Commonwealth Ct. 77, 377 A.2d 1277 (1977). In ruling on a demurrer, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint. *DeSantis v. Swigart,* 296 Pa. Superior Ct. 283, 442 A.2d 770 (1982). In the instant matter, the trial court dismissed each of Appellants' constitutional law claims upon its finding that they failed to plead certain elements which are essential to state a cause of action under the relevant civil rights provisions. We agree.

First, Appellants assert a cause of action under 42 U.S.C. 1981.[8] It is uncontroverted that intentional ra-

---

[8] Title 42 U.S.C. §1981 reads:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to

cial discrimination is a necessary element of a 1981 claim. *Hood v. New Jersey Department of Civil Service,* 680 F.2d 955 (3d Cir. 1982); *Walker v. Comay,* 640 F. Supp. 195 (W.D. Pa. 1986). Since Appellants have failed to allege that they are members of a racial minority and that their injuries stem from the intentional racial discrimination of Appellees, the Section 1981 claims were properly dismissed.

Second, Appellants contend that the School District violated their constitutional rights under 42 U.S.C. §1983.[9] The United States Supreme Court held in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), that Congress did intend municipalities and other local government units to be included among persons to whom Section 1983 applies. The *Monell* Court, however, made it explicit that litigants may seek relief against such governmental bodies only in cases where the alleged constitutional harm flows from the implementation or execution of a policy, regulation, statement, ordinance, officially promulgated decision or a government custom. *Id.* at 690-

---

make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[9] Title 42 U.S.C. §1983 reads in relevant part:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

91. Further, the *Monell* Court made equally clear that "a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694.

In the case at bar, Appellants have totally failed to plead any policy or custom of the School District which could establish a causal nexus between the School District and the tragic assault upon Ayana Scott and Tyisha Page. In the absence of this essential element, Appellants have failed to state a cause of action against the School District under Section 1983, and, therefore, their claim was properly dismissed.

Third, Appellants' allegations against the Appellees, Clayton and Spellman, in their individual capacities, are likewise insufficient to support a cause of action under 42 U.S.C. §1983. As the Eastern District Court stated in *Dudosh v. City of Allentown*, 629 F. Supp. 849, 851 (E.D. Pa. 1985), "a plaintiff pursuing a cause of action under Title 42 of the United States Code §§1983 and/or 1985, must plead *the facts* giving rise to the claimed deprivation of civil liberties and specifically avoid vague and conclusory allegations." (Emphasis added.) The fatal flaw present in the instant complaint is that the allegations are almost totally devoid of specific facts to support Appellants' theory that the named government officials had any direct involvement with the harm that Ayana Scott and Tyisha Page and their families ultimately suffered.

Appellants aver that Appellee, Constance Clayton "had actual notice of defendant Willis' deviate sexual inclinations . . . ," and that Appellee, Rita Spellman "had actual or constructive knowledge of Willis' deviate sexual behavior. . . ." However, the complete absence of facts to show how these appellees knew or should have known about the threat the teacher Willis posed, beyond vague assertions that Appellees knew of "prior

acts" or had received "complaints," leaves this Court with no other option but to sustain the dismissal of the Section 1983 claims against Appellees, Clayton and Spellman.

Finally, Appellants contend that they have pled a valid civil rights claim pursuant to Section 1983 under the "special relationship theory." The Third Circuit recently vacated a Federal District Court's dismissal of a complaint alleging the special relationship theory in *Estate of Bailey v. County of York,* 768 F.2d 503 (3d Cir. 1985). However, *Bailey* is factually distinguishable from the case at hand. The plaintiff in *Bailey* was the natural father of a minor who was beaten to death by her mother and her mother's paramour. Directly preceding the murder, the child protective services agency had responded to complaints of child abuse by temporarily removing the child from the home and having her medically examined. Upon confirming that the child had been abused, the agency returned her to her mother on the condition that the mother sever all contact with the paramour.

The plaintiff in *Bailey* argued that a special relationship existed between the child protective services agency and the child which would give rise to a cause of action under Section 1983. The *Bailey* Court agreed, and it articulated the factors which may be considered when determining whether a special relationship exists. These are:

> Whether the victim or perpetrator was in legal custody at the time of or prior to the incident; *whether the state had expressly stated its desire to provide affirmative protection* to a particular class of specific individuals; and whether the state knew of the victim's plight. (Emphasis added.)

*Id.* at 509, (citing *Jensen v. Conrad,* 747 F.2d 185, 194 n.11 (1984), *cert. denied,* 470 U.S. 1052 (1985)). The

instant matter is factually distinguishable from *Bailey* on several grounds. First, the defendants in *Bailey* had actual notice that the minor was in danger. In contrast, in the case at bar, Appellants have not pled any *facts* to suggest that any of the Appellees had notice of Willis' dangerous proclivities. Second, and perhaps more significantly, the defendants in *Bailey* had expressly demonstrated their desire to protect the child by removing her from the home temporarily and evaluating her situation. In the present matter, conversely, there is no allegation that any of the Appellees expressed any desire to afford Ayana Scott or Tyisha Page special protection or that they were even aware that these two children *in particular* faced a special danger. In the absence of an affirmative promise to protect the particular individual who eventually suffers the foreseeable injury, no special relationship can be proven. *See Martinez v. California*, 444 U.S. 277 (1980).

For all of the reasons discussed above, this Court is constrained to affirm the dismissal of Appellants' complaint.

## ORDER

NOW, May 25, 1988, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.